IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**SHIRLEY LEASE,**                                                Case No. 1:18 CV 343

       Plaintiff,

       v.                                             Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

       Defendant.                               MEMORANDUM OPINION AND ORDER

INTRODUCTION

Plaintiff Shirley Lease ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). The parties consented to the undersigned's exercise of jurisdiction in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 12). For the reasons stated below, the undersigned reverses and remands the decision of the Commissioner.

PROCEDURAL BACKGROUND

Plaintiff protectively filed for DIB and SSI in May 2013, alleging a disability onset date of October 1, 2010. (Tr. 289-96, 297-302). Plaintiff's date last insured for DIB was December 31, 2015. *See* Tr. 13, 327. Her claims were denied initially and upon reconsideration. (Tr. 194-97, 207-18). After a hearing before an administrative law judge ("ALJ"), at which Plaintiff (represented by counsel) and a vocational expert ("VE") testified (Tr. 37-73), the ALJ found Plaintiff not disabled in a written decision dated August 28, 2015 (Tr. 175-82). Plaintiff appealed the ALJ's decision to

the Appeals Council, which remanded the case for further consideration on August 30, 2016. (Tr. 189-92). Following a second hearing in February 2017 at which Plaintiff, and a different VE testified (Tr. 74-108), the ALJ issued a partially favorable decision (Tr. 11-31). Therein, she found Plaintiff disabled as of January 30, 2017, but not disabled prior to that date. *See id.* The Appeals Council denied Plaintiff's request for review, making the ALJ's second hearing decision the final decision of the Commissioner. (Tr. 1-6); *see* 20 C.F.R. §§ 404.955, 404.981, 416.1455, 416.1481. Plaintiff timely filed the instant action on February 13, 2018. (Doc. 1).

**FACTUAL BACKGROUND**

Personal Background and Testimony

Born in 1960, was 55 years old on her date last insured. *See* Tr. 289. Plaintiff alleged disability based on back and leg pain, fatigue, hand cramping and a weak bladder. (Tr. 332). She had a twelfth-grade education, and reported past work as an assembler in a factory and as a bartender/cook/waitress in a café. (Tr. 333). The VE classified these jobs as: box maker, bartender, short-order cook, and waitress. (Tr. 57). Plaintiff stopped working in 2010 after she was fired for drinking at work, after a work robbery. (Tr. 46-47).

At the first hearing, Plaintiff testified that she was unable to work due to back pain. (Tr. 47-48). Plaintiff testified she had difficulty getting along with others "[s]ometimes", and her boss at her previous job yelled at her if she "did anything wrong like . . . wrote down an order wrong, made something wrong." (Tr. 52). When asked if she made mistakes frequently, Plaintiff responded: "Sometimes, sometimes not." (Tr. 52-53). Plaintiff also said she "[s]ometimes" had conflicts with other people because "[t]hey're just rude." (Tr. 54). She would either react to people or ignore them in these situations. *Id.*

At the second hearing, Plaintiff testified to worsened back and hand pain. (Tr. 81-82). She also testified that she used a computer to look up words in the news, or her medical condition that she did not understand. (Tr. 83). She testified to problems with reading – specifically trouble understanding or pronouncing big words. (Tr. 84).

Plaintiff was not in counseling but had an upcoming appointment with a psychiatrist. *Id.* She took Zoloft for depression because she was "[j]ust down all the time"; the Zoloft helped "a little". (Tr. 84-85).

The ALJ asked Plaintiff if she previously had any difficulty getting along with others, and she said she did. (Tr. 85). When asked if she still had such difficulty, Plaintiff responded: "well no I don't really see that many people." *Id.* In describing her difficulties with others, Plaintiff testified she did not like others telling her what to do. (Tr. 86). She said she had no social activities, and "[h]ardly ever" saw anyone. *Id.* She lived with her boyfriend and they sometimes argued. *Id.*

Plaintiff testified she used to drink too much but cut back approximately two years prior. (Tr. 52-54). She had not been intoxicated in those two years. (Tr. 54).

Relevant Medical Evidence[1]

In June 2012, Plaintiff underwent a consultative psychological evaluation with Richard Davis, M.A. (Tr. 395-402). Plaintiff told Mr. Davis she thought she could not work due to physical problems, and that "[e]ven though she listed depression later on, she did not indicate that she felt that her emotional problems would interfere with her being employed." (Tr. 395). Mr. Davis noted

---

1. The ALJ determined Plaintiff was disabled as of January 30, 2017. *See* Tr. 30-31. Plaintiff challenges the ALJ's decision to find her not disabled prior to this date. Therefore, the relevant time period at issue is Plaintiff's alleged onset date (October 1, 2010) through the date she was found disabled (January 30, 2017). Additionally, Plaintiff only challenges the ALJ's evaluation of her mental, not her physical impairments. *See* Doc. 14, at 4-5; *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (issues not raised in opening brief waived).

Plaintiff was "limited intellectually" and it was difficult to get information from her. (Tr. 397). Plaintiff had difficulty answering questions, but spoke coherently with no flight of ideas. (Tr. 398). Mr. Davis observed Plaintiff's responses were "loosely structured, circumstantial and tangentially presented" which led him to question the validity of her responses. *Id.* She was "very guarded". *Id.* In cognitive functioning, Plaintiff was able to do serial sevens "very slowly"; she could remember seven digits forward after two attempts, and three digits in reverse. (Tr. 399). Mr. Davis noted Plaintiff's math skills were "limited", explaining that "[s]he could not grasp the task of counting from 1 to 40 by adding 3 each time." *Id.* He opined Plaintiff was "severely limited in her abilities to think logically and use common sense and judgment." *Id.* She could not recall any of ten given words after a period of five minutes. *Id.* Mr. Davis assessed alcohol dependence, adjustment disorder with depressed mood, and borderline intellectual functioning. (Tr. 400). He opined Plaintiff had "some difficulty understanding, remembering and carrying out even simple instructions, again noting she "could not grasp the task of counting from 1 to 40 by adding 3 each time even though [he] tried to explain that to her more than once." *Id.* He noted Plaintiff "basically was paying attention and trying to do that which I was asking her to do", but she "appear[ed] limited intellectually." *Id.* Mr. Davis assessed a Global Assessment of Functioning ("GAF") score of 55, indicating moderate symptoms.[2]

Plaintiff underwent a second consultative psychological examination with Mr. Davis in July 2013. (Tr. 427-32). Mr. Davis again observed Plaintiff to be "somewhat guarded when giving

---

2. A GAF score is a "clinician's subjective rating, on a scale of zero to 100, of an individual's overall psychological functioning." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503, n.7 (6th Cir. 2006). A score between 51-60 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., Text Revision 2000).

information", noting she would "eventually" answer questions, but "it took a while for her to do so." (Tr. 429). He attributed this to her limited intellect and that "it may have taken awhile for her to process that which [he] was asking." *Id.* In cognitive functioning, Plaintiff was able to remember four digits forward and three in reverse. *Id.* She was able to count from 1 to 40 by threes, but "found it extremely difficult." *Id.* Mr. Davis again noted Plaintiff was "extremely limited in her abilities to think logically and use common sense and judgment" *Id.* Mr. Davis's functional assessment had not changed since his previous assessment; he provided the same diagnoses, and GAF score. (Tr. 430-31). Finally, he noted Plaintiff "present[ed] as having some difficulties relating satisfactorily to other people". (Tr. 431).

Also in July 2013, state agency psychologist Vicki Warren, Ph.D., reviewed the evidence regarding Plaintiff's mental impairments and concluded Plaintiff had moderate restrictions in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. (Tr. 115). She opined Plaintiff was not significantly limited in the ability to understand and remember very short and simple instructions, but was moderately limited in her ability to understand, remember, and carry out detailed instructions. (Tr. 119). She opined Plaintiff could "perform[] simple, routine work tasks in a fairly predictable work environment", "should not work in direct contact with the general public" and would "do best in [a] well spaced work environment . . . [with] brief, superficial interaction with coworkers and supervisors." (Tr. 119-20). Dr. Warren found Plaintiff was "capable of adjusting to occasional, routine changes in a work environment." (Tr. 120).

In September 2013, state agency psychologist Bruce Goldsmith, Ph.D., reviewed the evidence regarding Plaintiff's mental impairments. (Tr. 148-49, 152-54). He affirmed Dr. Warren's opinion. *See id.*

5

In treatment records primarily for physical problems, in the section regarding neurological examination, Plaintiff was frequently noted to have logical thought content and be alert and oriented. *See* Tr. 440, 454, 459, 490, 494, 502, 505, 509, 513, 528, 536, 540, 557, 568, 572, 578, 607, 612, 616, 619, 640. Additionally, in these and a few other records, Plaintiff was noted to be pleasant, cooperative, interactive, or conversant. *See* Tr. 439-40, 490, 494, 502, 505, 509, 513, 528, 536, 540, 551, 557, 568, 572, 579, 612, 616, 619, 640.

VE Testimony

*First Hearing*

Paula Zinsmeister, a VE, appeared and testified at the first ALJ hearing (Tr. 56-72). In his first hypothetical question, the ALJ asked the VE to consider an individual with the following mental limitations:

> [L]imited to simple, routin[e] type work with few changes and no fast paced production requirements for time or quantity, avoid jobs that work with the general public but can interact with co-workers and supervisors in a superficial manner defined as speaking or signaling to ask questions, serve, carry out instructions but no mentoring, collaborating or persuading.

(Tr. 57). The VE responded that such a person could not perform past work. (Tr. 57-58) (box maker precluded because of production quantity and time; bartender and waitress precluded because of exposure to the public; short-order cook precluded because not simple, routine work). However, such a person could perform other work such as merchandise marker, housekeeping cleaner, and cafeteria attendant. (Tr. 58-59).

In his second hypothetical question, the ALJ offered similar restrictions, but stated the individual could "interact with [the] general public, co-workers and supervisors. frequently and in a superficial manner" as previously-defined. (Tr. 59). The VE again opined such an individual could not perform past work as a bartender, waitress, or short order cook because they were not

6

"simple and routine." (Tr. 59-60). However, Plaintiff could perform the same previously-identified other jobs. (Tr. 69).

In a third hypothetical question, the ALJ asked the VE to consider an individual:

> limited to simple and detailed instructions, no fast paced production requirements for time or quantity, can adapt up to occasional changes in the work place setting, can interact with the general public, co-workers and supervisors, frequently and in a superficial manner defined as speaking or signaling to ask questions, serve, carry out instructions but no mentoring, collaborating or persuading.

(Tr. 70). The VE responded that such an individual could perform the prior jobs as bartender, short order cook, and waitress. *Id.* ("[B]ased on the fact that detailed instructions and ability to adapt to changes are included[.]"). The individual could not perform the box maker job due to fast paced production requirements. *Id.*

In a fourth hypothetical question, the ALJ modified the physical restrictions, and reverted back to the mental limitations from the second hypothetical. *See* Tr. 70-71. The VE testified that such an individual could not perform past work, but could perform other jobs such as laundry worker, kitchen helper, and cook helper. (Tr. 71).

*Second Hearing*

A different VE, Mr. Moseley, testified at the second hearing. (Tr. 99-108). The ALJ first asked the VE to assume an individual with the following mental limitations:

> [C]an understand, remember and apply information sufficiently to perform simple and detailed instructions, but no fast paced production requirements for time or quantity, can adapt to occasional changes in the work place setting, can interact with the general public, co-workers and supervisors frequently and in a superficial manner defined as speaking or signaling to ask questions, serve and carry out instructions but no mentoring, collaborating or persuading.

(Tr. 100). The VE testified that such an individual could perform past work as a bartender, waitress, and short-order cook, but not as a box maker. (Tr. 101).

In the second hypothetical question, the ALJ asked the VE to assume an individual

7

> [L]imited to simple, routine type work with few changes and no fast paced production requirements for time or quantity, avoid jobs that work with the general public but can interact with co-workers and supervisors in a superficial manner defined as speaking or signaling to ask questions, serve and carry out instructions but no mentoring, collaborating or persuading.

(Tr. 101).[3] The VE testified such an individual could not perform past relevant work, but could perform other jobs such as cafeteria attendant, assembler, or folder. (Tr. 101-02).

In a third hypothetical question, the ALJ posed the following mental limitations:

> [L]imited to simple instructions[,] up to occasional changes in work environment, no fast paced production requirements for time or quantity, can interact with others and that includes general public, co-workers and supervisors in a superficial manner defined speaking or signaling to ask questions, serve and carry out instructions but no mentoring, collaborating or persuading.

(Tr. 102). The VE testified that such an individual could not perform past relevant work due to the limitations to simple instructions and occasional changes in the work environment. *Id.* ("The work in the past was lower level, semiskilled[.]"). *Id.* The individual could still perform the other jobs identified in response to the second hypothetical. (Tr. 103).

In a fourth hypothetical question, the ALJ asked the VE to assume the following mental limitations:

> [L]imited to simple, routine type work with few changes, no fast paced production requirements for time or quantity, can interact with the general public, co-workers and supervisors frequently and in a superficial manner defined as speaking or signaling to ask questions, serve, carry out instructions, but no mentoring, collaborating or persuading.

---

3. This hypothetical question mirrors the first hypothetical question from the first ALJ hearing. *See* Tr. 57. Both VEs concluded Plaintiff could not perform past relevant work with these limitations. *See* Tr. 57-58, 101-02.

(Tr. 103-04).[4] The VE responded that his answer was the same as the previous hypothetical, meaning jobs of cafeteria attendant, folder, and assembler were still available. (Tr. 104).

The VE also testified that an individual who is off task more than fifteen percent of the time is not able to maintain employment. (Tr. 104-05).

ALJ Decision

In her written decision dated March 8, 2017, the ALJ found Plaintiff met the insured status requirements for DIB through December 31, 2015, and had not engaged in substantial gainful activity since her alleged onset date of October 1, 2010. (Tr. 13). Plaintiff had severe impairments of back sprains and strains, scoliosis, arthropathy, carpal tunnel syndrome, anxiety, and depression, but none of these impairments (singly or in combination) met or medically equaled the severity of a listed impairment. (Tr. 14-15). The ALJ then found that prior to January 30, 2017, Plaintiff had the following mental residual functional capacity ("RFC"):

> The claimant can understand, remember, and apply information sufficiently to perform simple and detailed instructions but no fast-paced production requirements for time or quantity. She can adapt to occasional changes in the workplace setting and can interact with the general public, co-workers, and supervisors frequently and in a superficial manner defined as speaking or signaling to ask questions, serve and carry out instructions, but no mentoring, collaborating, or persuading.

(Tr. 18). The ALJ found Plaintiff could perform her past relevant work as a bartender, waitress, or short-order cook prior to January 30, 2017. (Tr. 29). Therefore, the ALJ concluded Plaintiff was not disabled prior to January 30, 2017. (Tr. 30-31).[5]

---

4. This hypothetical question mirrors the second hypothetical question from the first ALJ hearing. S*ee* Tr. 59. Both VEs concluded Plaintiff could not perform past relevant work with these limitations. *See* Tr. 59-60, 104.

5. As a result, Plaintiff was not entitled to DIB because her date last insured was December 31, 2015. (Tr. 30-31).

9

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) & 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. §§ 404.1520 and 416.920—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff contends the ALJ's determination of her mental RFC is not supported by substantial evidence. Specifically, she objects to the ALJ's inclusion of the ability to understand, remember and apply information to perform detailed instructions, and the ability to interact frequently with the general public. For the reasons discussed below, the undersigned reverses the Commissioner's decision and remands for further proceedings consistent with this opinion.

A claimant's RFC is an assessment of "the most [s]he can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). An ALJ must consider all symptoms and the extent to which those symptoms are consistent with the objective medical evidence. *Id.* at §§ 404.1529,

416.929. SSR 96-8p defines RFC as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting and on a regular and continuing basis." 1996 WL 374184, at *1. An ALJ's RFC "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7.

An ALJ must also consider and weigh medical opinions in formulating the RFC. *Id.* at §§ 404.1527, 416.927; SSR 96-8p, 1996 WL 374184, at *7. In weighing medical opinions, an ALJ must consider regulatory factors such as examining or treating relationship, consistency, supportability, and specialization. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).

The RFC is not a medical opinion, but an administrative determination reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2); *see also Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442-43 (6th Cir. 2007) (rejecting argument that RFC lacked the support of substantial evidence because no physician offered a corresponding RFC); *see also Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) ("[T]o require the ALJ to base her RFC on a physician's opinion, would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability.")

. Accordingly, the ALJ bears the responsibility for determining an RFC based on all the relevant evidence. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). This finding, like all other findings made by the ALJ, must be supported by substantial evidence. 42 U.S.C. § 405(g); *Walters*, 125 F.3d at 528.

In her opinion, the ALJ explained that she rejected the opinions of the state agency reviewing physicians that Plaintiff was limited to simple, routine tasks as "inconsistent with examinations throughout the record that indicated the claimant showed logical thought content and

was alert and oriented." (Tr. 28) (citing Tr. 440, 454, 459, 490, 494, 502, 505, 509, 513, 528, 536, 540, 557, 568, 572, 578, 607, 612, 616, 619, 640). She provided a similar rationale, and identical citations, in addressing Mr. Davis's opinion. *See* Tr. 27. Additionally, the ALJ rejected the state agency reviewing physicians' opinion that Plaintiff could have no direct contact with the general public as "inconsistent with the claimant's work history in jobs with the general public for 12 years and treatment notes that indicated she was routinely pleasant, cooperative, interactive, and conversant." (Tr. 27-28) (citing Tr. 319 (earnings history); also citing Tr. 439-40, 490, 494, 502, 505, 509, 513, 528, 536, 540, 551, 557, 568, 572, 579, 612, 616, 619, 640). And she again listed these same records in rejecting Mr. Davis's opinion. *See* Tr. 27. Further, the ALJ cited Plaintiff's lack of mental health treatment (aside from medication prescribed by her primary care physician) as a reason to assign little weight to the only opinion evidence of record. *See* Tr. 27, 28. Finally, the ALJ also cited Plaintiff's "work history in jobs with the general public for 12 years" as a basis for discounting the opinion that Plaintiff could not work with the public.

The undersigned finds the RFC lacks the support of substantial evidence. Neither the ALJ in her decision—nor the Commissioner in her brief—explain how routine findings that Plaintiff was alert and oriented and had logical thought content, demonstrated that she could "understand, remember, and apply information sufficiently to perform . . . detailed instructions" rather than just simple instructions as the opinion evidence suggested.[6] Moreover, the ALJ does not explain how findings that Plaintiff was pleasant, cooperative, interactive, conversant, and had appropriate mood and affect with her treating providers demonstrated Plaintiff could interact with the general public "on a regular and continuing basis." 1996 WL 374184, at *1; *See, e.g., Miller v. Comm'r of Soc.*

---

6. It is entirely unclear on what the ALJ based this "detailed" instruction finding, other than her exchanges with the VEs at each hearing wherein each VE opined that Plaintiff's past work required more than simple instructions. *See* Tr. 59-70; Tr. 102-03.

*Sec.*, 811 F.3d 825, 838 (6th Cir. 2016) (finding ALJ's reliance on Plaintiff's ability to take his children to school and go to church error as it did not show Plaintiff had any such daily, *sustained* ability for social interaction). Additionally, the fact that Plaintiff could work with the general public during a time in which she did not allege disability does not undermine a later finding that she could not. Similarly, the ALJ's reliance on Plaintiff's lack of mental health treatment might undermine Plaintiff's subjective complaints, but still does not explain the basis for these findings in the RFC. That is, taken as a whole, the Court finds the records the ALJ cites to reject the opinions of Mr. Davis and Drs. Warren and Goldsmith on these issues, is not "such relevant evidence as a reasonable mind might accept as adequate to support" the ALJ's conclusion. *Besaw*, 966 F.2d at 1030. And the ALJ's opinion as a whole does not comply with the requirement that an ALJ's RFC "describe[] how the evidence supports each conclusion." *Id.* at *7. As such, remand is required.

<u>Failure to Comply with Appeals Council Remand</u>

In passing, Plaintiff implies that the ALJ failed to comply with the Appeals Council's order. (Doc. 14, at 13). Specifically, she notes: the ALJ "chose not to obtain any additional evidence regarding [Plaintiff's] mental functioning. Nor did the ALJ request the assistance of a medical expert. Instead, the ALJ unreasonably relied upon her own expertise to determine [Plaintiff's] capabilities." *Id.* The Commissioner does not directly respond to this argument.

There is no consensus among federal courts regarding whether an ALJ's failure to follow Appeals Council directives in a remand order may serve as independent grounds for reversal, in the absence of some other error. *See Schults v. Colvin*, 1 F. Supp. 3d 712, 715–16 (E.D. Ky. 2014). "Differing opinions exist not only between circuits, but also among courts within the Sixth Circuit which has not considered this particular issue." *Id.* For example, some district courts within this Circuit have held they lacked jurisdiction to review what they viewed as an internal agency matter

that arose prior to issuance of the Commissioner's final decision. *See, e.g., Sharay v. Comm'r of Soc. Sec.*, 2016 WL 8114220, *1 (E.D. Mich.), *report and recommendation adopted*, 2016 WL 5539791; *Cooper v. Colvin*, 2014 WL 2167651, *2 (W.D. Ky.); *Brown v. Comm'r of Soc. Sec.*, 2009 WL 465708, *5 (W.D. Mich.). Other district courts have held this is a procedural error that denied the plaintiff fair process and, therefore, reversed the final decision of the Commissioner and, pursuant to sentence four of 42 U.S.C. § 405(g), remanded the case back to the Commissioner for further proceedings. *See, e.g., Godbey v. Colvin*, 2014 WL 4437647, at *5 (W.D. Ky.); *Salvati v. Astrue*, 2010 WL 546490, *5–8 (E.D. Tenn.). And, at least three district courts within the Sixth Circuit have for the purposes of the analysis, assumed, without deciding, that such an error may serve as an independent ground for reversal, and the court thus has jurisdiction to consider the issue. *See Kearney v. Colvin*, 14 F.Supp.3d 943, 950 (S.D. Ohio 2014); *Schults*, 1 F.Supp.3d at 715–17; *Long v. Comm'r of Soc. Sec.*, 2012 WL 4009597, *2–3 (S.D. Ohio).

The Commissioner's own regulations require an ALJ to "take any action that is ordered by the Appeals Council . . ." 20 C.F.R. § 404.977(b). In *Godbey,* a district court held that, "[t]his means administrative law judge compliance with a remand order is a mandatory procedural requirement under the Commissioner's own regulations. Thus, when an administrative law judge fails to comply with an emphatic directive ... within a remand order, the administrative law judge's decision does not comport with applicable procedural law." *Godbey*, 2014 WL 4437647, at *7 (citations omitted).

The undersigned finds it unnecessary to make a determination on this issue because, as discussed above, remand is already required. However, the undersigned discusses the Appeals Council's order in this context because it appears the ALJ did not fully comply with its directive, and, on remand, may find the Appeal's Council's recommendations instructive.

15

In its remand order, the Appeals Council specifically instructed:

Upon remand, the Administrative Law Judge will:

- Obtain additional evidence concerning the claimant's impairments, including borderline intellectual functioning, in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512-1513 and 416.912-913). The additional evidence may include, if warranted and available, consultative IQ testing and mental status . . . examinations and medical source statements about what the claimant can still do despite the impairments.

- Further if necessary, obtain evidence from a medical expert to clarify the nature and severity of the claimant's impairment (20 CFR 404.1527(e) and 416.927(e) and Social Security Ruling 96-6p).

- As necessary, give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p). In so doing, evaluate the nontreating source opinions pursuant to the provisions of 20 CFR 404.1527 and 416.927 and Social Security Rulings 96-2p and 96-5p and nonexamining source opinions in accordance with the provisions of 20 CFR 404.1527(e) and 416.927(e) and Social Security Ruling 96-6p, and explain the weight given to such opinion evidence.

  As appropriate, the Administrative Law Judge may request the nontreating sources to provide additional evidence and/or further clarification of the opinions and medical source statements about what the claimant can still do despite the impairments (20 CFR 404.1512 and 416.912). The Administrative Law Judge may enlist the aid and cooperation of the claimant's representative in developing evidence from the claimant's treating sources.

- If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

- If necessary, conduct the further proceedings required to determine whether alcoholism is a contributing factor material to the finding of disability.

(Tr. 190-91).

On remand, the ALJ did not, it appears, "[o]btain additional evidence concerning the claimant's impairments, including borderline intellectual functioning . . . ." (Tr. 100). The ALJ simply accepted new treatment evidence from the time between the two decisions. *Compare* Tr. 185-86 (exhibits to ALJ's first decision, through 10F [Tr. 1-532]), *with* Tr. 36 (exhibits to ALJ's second decision, through 14F, with 11F-14F [Tr. 533-661] consisting of office treatment records from July 2015 through February 2017, and a physical medical source opinion). None of this evidence was specifically related to borderline intellectual functioning. Rather, the ALJ concluded—based on discounting Mr. Davis's opinion, treatment providers' opinions that Plaintiff "routinely presented as conversant, logical to contend, alert, and oriented", and Plaintiff's ability to work and perform activities of daily living—that Plaintiff's borderline intellectual functioning "imposed no more than minimal, if any, limitation in the claimant's ability to perform basic work-related activities." (Tr. 14).

The Appeals Council also stated "[t]he additional evidence may include, if warranted and available, consultative IQ testing and mental status . . . examinations and medical source statements about what the claimant can still do despite the impairments." (Tr. 190). The Appeals Council also mentioned obtaining evidence from a medical expert "if necessary". *Id.* The ALJ did neither. However, the language, "if warranted and available" and "if necessary", suggests discretion was left to the ALJ to make this determination. Thus, the undersigned cannot find the ALJ failed to comply with the Appeals Council's instructions in this regard.

As discussed in the prior section, the ALJ in this case failed to adequately explain the basis for her RFC findings that Plaintiff could interact with the general public, and perform detailed

instructions, in contrast to the opinion evidence of record. The Commissioner has discretion regarding how to address this defect on remand. However, the Court notes the record before the ALJ may be insufficient to do so—as the Appeals Council suggested. As such, the ALJ may wish to obtain additional evidence (from a medical expert, additional consultative examiner, or otherwise) on remand to assist in providing sufficient information to remedy the defective explanation.

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying DIB and SSI not supported by substantial evidence and reverses and remands that decision pursuant to Sentence Four of 42 U.S.C. § 405(g).

      s/James R. Knepp II
      United States Magistrate Judge